# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-401


RYAN DIETZ

VERSUS

LOWE'S HOME CENTERS, INC.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF ACADIA, NO. 09-10162
HONORABLE SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.


**MOTION TO STRIKE DENIED. AFFIRMED.**

M. Blake Monrose
Hurlburt, Monrose & Ernest
Post Office Drawer 4407
Lafayette, LA 70502-4407
(337) 237-0261
COUNSEL FOR DEFENDANT/APPELLEE:
    Lowe's Home Centers, Inc.

Michael B. Miller
Jacqueline B. Manecke
Michael Miller & Associates
Post Office Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
    Ryan Dietz

**AMY, Judge.**

The claimant challenged his employer's assertion that he could return to work following a work-related accident. He further sought continued treatment for injury to his brachial plexus, for mental injury, and for cervical complaints. The employer, however, sought return of indemnity benefits paid after an orthopedic surgeon approved a submitted job description. While the workers' compensation judge continued pain treatment for the claimant's shoulder injury, she found no work-related causation of the cervical complaints and rejected the mental injury claim. The workers' compensation judge found that no indemnity benefits were owed after the treating physician's approval of the job position. The parties' respective claims for penalties and attorney fees were denied. The claimant appeals and has also filed a motion to strike. For the following reasons, we deny the motion to strike and affirm the ruling under review.

### Factual and Procedural Background

Ryan Dietz alleges that he sustained injury while moving a refrigerator in the course and scope of his employment at Lowe's Home Centers, Inc. in July 2009. In December 2009, Mr. Dietz filed an initial disputed claim form challenging Lowe's compensation rate and seeking his choice of orthopedic physician. Mr. Dietz also requested penalties and attorney fees. In response, Lowe's sought an offset/credit in the event the workers' compensation judge found compensation benefits due.

Acting upon the initial dispute, the workers' compensation judge ordered that Mr. Dietz was permitted to see Dr. Robert Morrow, an orthopedic surgeon, as his initial choice of physician "with a sub-specialty in hands." Dr. Morrow's records indicate that Mr. Dietz complained of upper left body pain extending up to

his neck. A 2010 MRI of the cervical spine was read as negative. Dr. Morrow's treatment ultimately focused on injury to the brachial plexus.

The parties agreed to a December 2010 consent judgment indicating that the claimant was injured in the course and scope of his employment and that Lowe's would pay a penalty and attorney fees to cover those issues through October 14, 2010. The consent judgment also reflected that Lowe's "agreed to pay weekly compensation benefits in the amount of $277.88 beginning on November 30, 2009 through the present and that the actual weekly compensation rate calculation will be reserved to be established at a later date."

Mr. Dietz returned to the workers' compensation judge, requesting psychiatric treatment as recommended by Dr. Morrow. He also sought penalties and attorney fees associated with Lowe's refusal to provide the treatment. Lowe's responded with an exception of improper use of summary proceedings, noting that medical treatment was not covered by the consent judgment. The workers' compensation judge granted the exception, converting the matter to a disputed claim for compensation in October 2011.

By November 2011, Mr. Dietz began treating with Dr. James Blackburn, a psychiatrist. Thereafter, and upon motion of Lowe's, the workers' compensation judge ordered Mr. Dietz to submit to an evaluation by the employer's choice of psychologist, Dr. Charles Frey, and by the employer's choice of neurosurgeon, Dr. Ricardo Leoni.

Lowe's additionally filed an answer to the converted disputed claim for compensation in which it denied Mr. Dietz claims on the merits and sought offsets for benefits previously provided. Before the merits of the underlying claim were addressed, however, Mr. Dietz filed an amended motion for penalties and attorney

2

fees, again citing the December 2011 consent judgment for the proposition that Lowe's failure to approve treatment as recommended by Dr. Morrow warranted the imposition of penalties and attorney fees. In this instance, the contested care was the previously discussed psychiatric care as well as physical therapy for Mr. Dietz's cervical spine complaints, failure to pay mileage requests, failure to approve pain medication, and failure to approve a cervical MRI as recommended by Dr. Daniel Hodges, a physical medicine and rehabilitation physician.

In response, Lowe's noted that the workers' compensation judge previously denied Mr. Dietz's request for penalties and attorneys fees under the consent judgment, converting that claim to a disputed claim form. Despite that ruling, Lowe's continued, Mr. Dietz filed the identical motion for penalties and attorney fees again, adding the additional claims. Lowe's sought sanctions pursuant to La.Code Civ.P. art. 863, asserting that: "The items set out [in] plaintiff's original motion and order for penalties and attorney's fees as well as the amended motion and order for penalties and attorney's fees has absolutely nothing to do with the Consent Judgment entered on December 6, 2011, even though [Mr. Dietz] avers in his motion that they do, and even though [the workers' compensation judge] has already ruled that the allegations set out in the original motion, which are identical to the allegations set out in the amended motion, do not." Lowe's also filed an exception of improper use of summary proceedings. The record indicates that the workers' compensation judge granted the exception, but deferred ruling on the sanctions issue until the time of trial.

In March 2012, Lowe's sought an Independent Medical Examination of Mr. Dietz for recommendations regarding psychological treatment as previously commented upon by Dr. Blackburn and Dr. Frey. Over Mr. Dietz's objection, the

3

workers' compensation judge appointed an "OWC IME" in April 2012. *See, e.g.,* La.R.S. 23:1123; La.R.S. 23:1124.1.

When Mr. Dietz again filed an amended motion and order for penalties and attorney fees for alleged failures to comply with the consent judgment in May 2012, Lowe's repeated its claim of improper use of summary proceedings and res judicata. As before, Lowe's noted the prior filings as well as the workers' compensation judge's earlier ruling. Lowe's again sought sanctions pursuant to La.Code Civ.P. art. 863, noting that it was defending Mr. Dietz's claims for the third time. Subsequently, Mr. Dietz filed an amended claim form to include his claims for penalties and attorney fees. In its answer, Lowe's reasserted its prior defenses and again sought dismissal of all of Mr. Dietz's claims.

In June 2012, and pursuant to the workers' compensation judge's order for an IME, Mr. Dietz was evaluated by Dr. Harold Ginzburg, a psychiatrist. Dr. Ginzburg explained in his July 10, 2012 report that he concurred with the opinion expressed by Dr. Sandra Weitz, a pain management specialist, who suggested that Mr. Dietz suffered from brachial plexopathy and that he would be able to return to work in some capacity with better medication management and with some counseling. Dr. Ginzburg found no clinical evidence of malingering at that time. However, in a supplemental report, Dr. Ginzburg modified his prior opinion, finding clinical indication of secondary gain and malingering.

Although the hearing was conducted in September 2012, the workers' compensation judge rendered verbal reasons for ruling in August 2014 and determined that Mr. Dietz had, in fact, sustained an accident on July 11, 2009, causing injury to his brachial plexus. The workers' compensation judge rejected Mr. Dietz's contention that the accident caused injury to his cervical spine.

4

Neither did the workers' compensation judge find that the claimant had proven a mental injury as a result of the accident. With regard to indemnity benefits, the workers' compensation judge found that Mr. Dietz was temporarily totally disabled from the date of the accident through March 14, 2011, the date that Dr. Morrow approved the modified job position submitted by Lowe's and found the employer entitled to a credit for any possible future indemnity obligation for any indemnity benefits that it paid after that date. As for medical treatment, the workers' compensation judge found that Mr. Dietz was entitled to continue receiving treatment for his brachial plexus injury from Dr. Hodges, and that he was entitled to treatment by his choice of an anesthesiologist/pain medicine physician for that injury. The workers' compensation judge found that Lowe's had reasonably controverted the claim and, therefore, denied Mr. Dietz's claims for penalties and attorney fees under La.R.S. 23:1201(F), La.R.S. 23:1201(G) or La.R.S. 23:1201(I). Finally, the workers' compensation judge denied Lowe's request for the imposition of sanctions under La.Code Civ.P. art. 863.

Mr. Dietz appeals, assigning the following as error:

1) The workers' compensation judge erred in denying psychiatric and psychological treatment.

2) The workers' compensation judge erred in finding that Mr. Dietz did not prove he injured his cervical spine in the accident.

3) The workers' compensation judge erred in finding that Mr. Dietz was not entitled to indemnity benefits after March 14, 2011.

4) The workers' compensation judge legally erred in ordering an IME with Dr. Harold Ginzburg and in relying upon the IME reports of Dr. Ginzburg.

5) The workers' compensation judge erred in not awarding penalties, attorney's fees, expenses and legal interest.

5

Mr. Dietz additionally filed a motion to strike with this court, seeking the exclusion of Dr. Ginzburg's supplemental IME report. That motion was referred to the merits of the appeal.

**Discussion**

*Motion to Strike*

By this motion, Mr. Dietz questioned the workers' compensation judge's consideration of a supplemental report issued by Dr. Ginzburg, the psychiatrist who performed the IME ordered by the trial court. At the hearing, Lowe's entered into evidence Dr. Ginzburg's initial, July 2012 report. However, the exhibits forwarded to this court include a copy of a supplemental report issued by Dr. Ginzburg rendered May 14, 2013, subsequent to the September 2012 hearing date. Mr. Dietz suggests that the workers' compensation judge was without authority to consider this supplemental report which could not have been introduced into evidence at the hearing.

Review of the August 2013 reasons for ruling indicates that the workers' compensation judge referenced the "reports" of Dr. Ginzburg. She also explained to the parties that she had appointed Dr. Ginzburg to perform an IME under La.R.S. 23:1124.1, which provides, in part, that: "[T]he workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians." Although the record lacks detail regarding the rendition of the supplemental report,[1] it is notable that the period between the hearing date and the reasons for ruling spanned over one year.

---

[1] The "Introduction" to his supplemental report, Dr. Ginzburg's indicated that "Ms. Jennifer Meche, Dispute Resolution Specialist, Office of Workers' Compensation Administration . . . requests that I review additional medical records on Ryan Dietz to determine if there are any changes in the professional opinions I rendered in my July 10, 2012 report."

While Mr. Dietz suggests that he "was deprived of the opportunity to cross-examine Dr. Ginzburg concerning his supplemental report and have his expert address Dr. Ginzburg's supplemental opinion which was rendered without an additional examination and based upon unknown records[,]" the record does not support that claim. Instead, the supplemental report includes a cover letter from the Office of Workers' Compensation to counsel for both parties stating that: "Enclosed is a copy of the supplemental report issued by Dr. Ginzburg, the physician selected by the Office of Workers' Compensation to conduct the independent medical examination in this matter. A telephone status conference will be set. If you need anything before then, please give me a call." The record is silent as to any objection to the supplemental record lodged by Mr. Dietz between the time of the letter, dated May 28, 2013, and the reasons for ruling, which occurred August 19, 2013.

For these reasons, we deny the motion to strike.

*Psychiatric and Psychological Treatment*

The workers' compensation judge concluded that Mr. Dietz "did not prove he suffered a mental injury as a result of the accident."[2] Mr. Dietz challenges this finding in his first assignment of error, noting that Dr. James Blackburn, his treating psychiatrist, attributed his "emotional disorder" to his work-related injury. Mr. Dietz also asserts that Dr. Frey, Lowe's choice of psychologist, indicated that his "emotional functioning" had been impacted by the pain and diminished activity

---

[2] In reasons for ruling, the workers' compensation judge explained that:

> I think with the reports of Dr. Gin[zburg], it is evident that pain management is appropriate, not psychiatric treatment; and therefore, the evidence does not clearly and convincingly establish the need for continued psychiatric treatment forever. I think all of the opinions except Dr. Blackburn's perhaps, were interested in a psychological evaluation to investigate the symptom magnification and psychological overlay.

stemming from the accident. Mr. Dietz suggests that these physicians' reports warranted a finding of medical necessity for the psychological treatment.

At the time Mr. Dietz met with Dr. Blackburn, the psychiatrist determined that the claimant had pain disorder with psychological factors of anxiety and depression. Dr. Blackburn recommended psychiatric and psychological treatment for that condition. However, that recommendation was early in the timeline of Mr. Dietz's injury and, as noted by the workers' compensation judge, some of the various physicians' references to psychological treatment/evaluation were within the context of investigation of "symptom magnification and psychological overlay." Notably, the court-appointed IME psychiatrist, Dr. Ginzburg, agreed that Mr. Dietz should maintain treatment for pain management, but did not relate mental injury to the accident in either the initial, July 2012 report or in his supplemental, May 2013 report. Instead, by the time of the May 2013 report, Dr. Ginzburg opined that "malingering/secondary gain seems to be, at this point in time, more likely than not." Dr. Ginzburg reported that "[t]here is clinical evidence of malingering" and that "[t]here is clinical indication of secondary gain."

In light of these factors, we find no manifest error in the workers' compensation judge's determination that Mr. Dietz failed to prove the existence of a mental injury by clear and convincing evidence. *See* La.R.S. 23:1021(8)(c)("A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.").

8

*Causation – Cervical Spine*

Throughout this matter, Mr. Dietz alleged that he sustained injury to his neck in the work-related accident. He references medical record documentation of his complaints and suggests that "[t]here is no medical opinion that [his] cervical injury was not caused by the accident or that he did not need the treatment recommended." Therefore, he questions the workers' compensation judge's determination that there was no evidence of cervical injury.

Certainly, early medical records commemorate Mr. Dietz's complaints of cervical pain and physician consideration of whether there was cervical involvement associated with the brachial plexopathy diagnosis. Significantly, however, a May 2010 cervical MRI performed at the request of Dr. Morrow was reported as "negative" and a 2012 cervical MRI performed at the request of Dr. Hodges was described by Dr. Hodges as "completely normal." By the time of the second MRI, Dr. Hodges commented only that he felt that Mr. Dietz's "issue" would be "permanent relative to his arm and shoulder." Dr. Hodges made no mention of neck at that point, but did recommend long term pain management. Although the workers' compensation judge concluded that the need for pain management was demonstrated, she found no similar support for continued cervical treatment. The record supports that determination.

This assignment lacks merit.

*Indemnity Benefits*

In framing his argument with regard to indemnity benefits, Mr. Dietz contends that disability should not have been considered as an issue at the hearing on the merits. Rather, he asserts that the fact of his disability was established by the October 2010 consent judgment and that, thereafter, only his issues of penalties

and attorney fees had been set for trial. Mr. Dietz addressed his argument regarding scope of the hearing in a post-trial memorandum as well.

The challenging procedural history in this matter reflects Mr. Dietz's ongoing concern regarding both the content of the consent judgment and the scope of the hearing ultimately conducted. The record contains several motions for penalties and attorney fees allegedly arising under the consent judgment. The workers' compensation judge rejected that contention, converting these matters to a claim on the merits and ultimately considering the expanse of the parties' ongoing claims.

Reference to the consent judgment reveals measured language indicating that Lowe's "agreed to pay weekly compensation benefits in the amount of $277.88 beginning on November 30, 2009 through the present[.]" The consent judgment did not reflect an agreement as to disability at some point in the future. *See also* La.R.S. 23:1204 ("Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter."). The record contains no judicial determination regarding disability.

Further, after the confection of the consent judgment, the employer filed an answer to the ongoing claim indicating that "only in the event that this Honorable Court finds defendant liable for any workers' compensation benefits, which is at all times specifically denied, then defendant pleads entitlement to any offset and/or offsets as per La.R.S. 23:1225 and/or La.R.S. 23:1212 and/or La.R.S. 23:1223 and/or La.R.S. 23:1206." It re-urged that claim in an answer to the claimant's disputed claim for compensation. Accordingly, we find no merit in Mr. Dietz's assertion that he was not provided with notice of Lowe's challenge to his disability

10

claim and no error in the workers' compensation judge's consideration of the indemnity issue.

As for the merits of the indemnification ruling, Mr. Dietz maintains that the workers' compensation judge erred in finding that benefits were not due after the March 2011 date on which Dr. Morrow approved a modified job position. He argues that the benefits should have continued after that date because of Dr. Morrow's April 2011 exam report in which he explained that the return to work should be delayed because of continued complaints and because of the need for psychological evaluation. However, Mr. Dietz's argument blurs the applicable burden of proof in this regard.

The workers' compensation judge did not terminate benefits as of March 2011. Instead, she determined that the claimant was not entitled to continuation of those benefits. This determination is consistent with La.R.S. 23:1221, which provides that an employee seeking indemnity benefits must prove his or her entitlement by clear and convincing evidence. *See also Snelling Personnel Serv. v. Duhon*, 00-661 (La.App. 3 Cir. 11/2/00), 772 So.2d 350 (wherein a panel of this court addressed a claim for indemnity benefits following an employer's prior voluntary provision of those benefits).

In addressing Mr. Dietz's claim for continued benefits, the workers' compensation judge noted physicians' reports in which they questioned the extent of his limitations from his injuries as well a functional capacity evaluation concluding that the extent of work capabilities was difficult to determine. The workers' compensation judge further explained that a functional capacity evaluation "showed sub-maximal or self-limited effort and concluded that Mr. Dietz was capable of sedentary work; but because of his sub-maximal, self-limited

11

effort, his true abilities may have been greater." Subsequently, the workers' compensation judge returned to her concern regarding credibility and explained that:

> Because of Mr. Dietz's symptom magnification, I think his histories, his complaints are unreliable. Dr. Morrow did mention this in his deposition that Mr. Dietz's complaints changed every time he saw him. He didn't see him that often, but it was something significant enough for Dr. Morrow to comment on. Dr. Morrow did ultimately approve the job tendered by the employer, and that was given credence to his complaints. I think when one takes away the complaints, you're back to what the FCE examiner found, in that his abilities would be higher if we had a true picture of his physical capabilities.

> Therefore, at this time, no further indemnity is due.

Mr. Dietz notes that there were positive medical indications of his ongoing physical injury after the March 2011 job approval by Dr. Morrow. Additionally, he references physician notations indicating the possibility of a return to work only after future treatment. Mr. Dietz asserts that this type of documentation indicates that the workers' compensation judge's determination that he was not entitled to indemnity benefits after March 2011 was in error.

The workers' compensation judge obviously determined that Mr. Dietz did, in fact, sustain physical injury as a result of the accident. The record supports that view as well the further determination that indemnity benefits were appropriate, at least until some point in time. However, it is also clear that the workers' compensation judge determined that Mr. Dietz's continued complaints and reporting of those complaints to his physicians were unreliable or became unreliable as the disability period progressed, thereby undercutting the weight attributable to any work recommendations. This view supports the workers' compensation judge's ultimate conclusion that Mr. Dietz failed to meet his burden

as to inability to engage in employment as described by La.R.S. 23:1221. *See also*

*Snelling*, 772 So.2d 350.

For this reason, we find no merit in this assignment of error.

*Independent Medical Exam*

In addition to the issue addressed by the motion to strike, Mr. Dietz contests

the workers' compensation judge's appointment of Dr. Ginzburg, as a psychiatric

IME pursuant to La.R.S. 23:1124.1. That statute provides:

> Neither the claimant nor the respondent in hearing before the
> workers' compensation judge shall be permitted to introduce the
> testimony of more than two physicians where the evidence of any
> additional physician would be cumulative testimony. However, the
> workers' compensation judge, on his own motion, may order that any
> claimant appearing before it be examined by other physicians.

*Id.* Specifically, Mr. Dietz argues that jurisprudence indicates that the authority to

appoint an IME physician pursuant to La.R.S. 23:11241.1 arises only in the

presence of a dispute regarding the claimant's condition. *See, e.g., Iberia Par. Sch.*

*Bd. v. Broussard*, 03-0151 (La.App. 3 Cir. 9/10/03), 854 So.2d 464, *writ denied*,

03-2852 (La. 12/19/03), 861 So.2d 564. Because, he alleges, there was no dispute

as to the need for psychiatric or psychological treatment or physical disability, the

workers' compensation judge was without authority to appoint under La.R.S.

23:1124.1.

The workers' compensation judge specifically rejected this argument,

finding that: "I want to note that claimant's counsel has made a big issue of the

fact that there was no dispute warranting the appointment of an IME. I appoint

under 1[1]24.1, which doesn't have any language requiring a conflict of opinion or

a dispute for the appointment. If I have questions, I am entitled to appoint the

IME, and I did so in this case."

As noted by the workers' compensation judge, La.R.S. 23:1124.1 does not contain language regarding a dispute. *But see* La.R.S. 23:1123 (which discusses an IME appointment following a dispute as to an employee's condition). However, in this case, the nature of, scope of, and appropriate treatment of Mr. Dietz's medical condition was in dispute. For instance, by the time the IME order was requested and entered, Dr. Blackburn had recommended psychiatric/psychological treatment whereas Dr. Frey recommended a more rehabilitative cognitive-based treatment to cope with pain. Accordingly, we find no error in the appointment of Dr. Ginzburg pursuant to La.R.S. 23:1124.1.

Mr. Dietz also challenges the introduction of Dr. Ginzburg's supplemental report after the hearing on the merits. However, we do not address this argument again as we resolved that issue within the context of the motion to strike. Finally, Mr. Dietz argues that Dr. Ginzburg's opinion should be excluded because the physician's narrative report indicates that he reviewed correspondence from Lowe's counsel describing certain medical records. Mr. Dietz argues that this communication violated La.R.S. 23:1317.1. In response, Lowe's asserts that the report indicates that the correspondence, contained in medical records forwarded to Dr. Ginzburg by the Office of Workers' Compensation, pre-dated the IME appointment and was not addressed to Dr. Ginzburg. Notwithstanding this argument as to the parameters of La.R.S. 23:1317.1, there is no indication that this issue was presented to or ruled upon by the workers' compensation judge. We do not consider the argument for the first time on appeal. *Suire v. Oleum Operating Co., L.C.*, 13-736 (La.App. 3 Cir. 2/5/14), 135 So.3d 87, *writ denied*, 14-0982 (La. 8/25/14), __ So.3d __, *writ denied*, 14-0987 (La. 9/12/14), __ So.3d __. *See also* Uniform Rules—Courts of Appeal, Rule 1-3.

14

*Penalties and Attorney Fees*

The workers' compensation judge denied Mr. Dietz's request for various penalties and attorney fees. Mr. Dietz now questions that determination in a number of respects. First, he argues that a penalty was appropriate pursuant to La.R.S. 23:1201.3 since, he contends, the employer did not pay judicial interest on the compensation that was paid under the consent judgment. Lowe's argues, however, that La.R.S. 23:1201.3(A) is inapplicable since the underlying judgment was a consent judgment and the statute relates to compensation awarded and payments directed "to be made by order of the workers' compensation judge[.]" Lowe's notes that the consent judgment indicates that it was entered by stipulation of the parties. Despite the opposing views of La.R.S. 23:1201.3, Mr. Dietz's claim fails for evidentiary reasons as the record does not demonstrate the extent to which the consent judgment was satisfied, or not, with regard to interest. Accordingly, we find no error in the denial of benefits pursuant to La.R.S. 23:1201(G).

Next, the claimant cites error in a failure to award penalties and attorney fees to him pursuant to 23:1201(F) for Lowe's failure to provide reimbursement for a physical therapy mileage request dated March 16, 2011 and for lab work expenses forwarded on August 9, 2011. This court has previously explained that a claimant has the burden of establishing that medical bills were not appropriately paid so as to invoke the penalty provision of La.R.S. 23:1201(F). *See Lebert v. McNeese State Univ.*, 05-856 (La.App. 3 Cir. 2/1/06), 932 So.2d 678. With regard to the two reimbursements at issue, Mr. Dietz introduced the reimbursement requests for both the mileage and the lab work. His counsel then questioned him as to whether he had received reimbursements for those figures. Initially, Mr. Dietz explained that he had not received reimbursement. Thereafter, upon questioning by counsel for

15

Lowe's, Mr. Dietz became more tentative in his response regarding his recollection generally for reimbursements and his ability to differentiate between what he had and had not received. In light of this equivocation, we find no error in the determination that penalties and attorney fees were not established by the evidence.

Finally, Mr. Dietz returns to the issue of psychiatric and/or psychological treatment. He contends that Lowe's failed to reasonably controvert his request to see Dr. Mark Warner upon the recommendation of his psychiatrist, Dr. Blackburn, and subsequently arbitrarily and capriciously terminated treatment with Dr. Blackburn. Thus, Mr. Dietz argues that he was entitled to penalties under La.R.S. 23:1201(F) and La.R.S. 23:1201(I) for those respective actions. As explained above, however, the record in this case reveals rigorous debate regarding the need for, scope of, and type of psychological or psychiatric care. The workers' compensation judge ultimately concluded that the necessity of such continued care was unwarranted due to findings of symptom magnification and unreliable complaints. This determination supports a finding that penalties were inappropriate under La.R.S. 23:1201.

For these reasons, Mr. Dietz's assignment regarding penalties, attorney fees, and expenses is without merit.

*Legal Interest*

Finally, Mr. Dietz asserts that the workers' compensation judge erred in failing to award legal interest on the judgment since his pleadings included a prayer for an award of interest on any amounts owed. In this case, however, no amounts were awarded. Accordingly, we do not amend the underlying ruling. This assignment lacks merit.

**DECREE**

For the foregoing reasons, the ruling of the Office of Workers' Compensation Judge is affirmed. Costs of this proceeding are assessed to the claimant—appellant, Ryan Dietz.

**MOTION TO STRIKE DENIED.  AFFIRMED.**